UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DELSHAWN J.,

          Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

---

21-CV-06697-MJR

DECISION AND ORDER

    Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 10)

    Plaintiff Delshawn J.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 6) is granted, and defendant's motion (Dkt. No. 7) is denied.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI on May 24, 2019, with an alleged onset date of January 1, 2008. (Administrative Transcript ["Tr."] 15, 144-50). The claim was initially denied on October 17, 2019, and upon reconsideration on December 19, 2019. (Tr. 15, 52-80; 83-95). Plaintiff filed a timely request for an administrative hearing before an administrative law judge ("ALJ"). (Tr. 98-113). On August 13, 2020, a telephone hearing was held by ALJ Michael W. Devlin, during which Plaintiff participated, with counsel. (Tr. 31-51). A vocational expert ("VE") also testified at the hearing. The ALJ issued an unfavorable decision on February 3, 2021. (Tr. 12-30). The Appeals Council denied Plaintiff's request for review on September 17, 2021. (Tr. 1-11). This action followed.

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is

not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 24, 2019, the application date. (Tr. 17). At step two, the ALJ found that Plaintiff has the following severe impairment: right C6 facet fracture, status-post anterior cervical discectomy and fusion. (Tr. 18-21). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work except he can occasionally lift/carry 10 pounds; frequently lift/carry less than 10 pounds; stand and/or walk up to two hours and sit eight hours; occasionally push and/or pull 10 pounds; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; frequently reach, handle and finger with the dominant right upper extremity; and frequently look up and down and turn the head to the left and right. (Tr. 21-25). At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 25). At step five, the ALJ found there are jobs

that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 25-26). Therefore, the ALJ found that Plaintiff is not disabled. (Tr. 26).

IV.     *Plaintiff's Challenge*

Plaintiff argues, *inter alia,* that the case must be remanded because the ALJ failed to provide adequate explanation as to how he arrived at the cervical-spine limitation in Plaintiff's RFC. The Court agrees.

Plaintiff has a history of cervical spinal fracture and cervical spinal surgery, and the ALJ found these conditions to be a severe impairment. (Tr. 18). In examining Plaintiff, consultative medical examiner Dr. Susan Dantoni, M.D., noted a limited range of motion of the cervical spine, along with "significant pain in [Plaintiff's] neck when he tried to move his neck." (Tr. 995). However, without explanation, Dr. Dantoni did not opine as to any limitations for Plaintiff twisting, turning, or moving his head; she was silent on Plaintiff's limitations in this regard. (Tr. 998). A medical opinion's silence on a particular limitation is not to be taken as any indication that the claimant has no limitation – especially where the opinion details other limitations. *See Bellucco v. Colvin*, 2016 WL 5334438, *15 (W.D.N.Y. Sept. 23, 2016) (noting that a form's silence as to a particular issue should not be interpreted as commentary) (citing *Miller v. Colvin*, 2016 WL 4478690, *14 (W.D.N.Y. Aug. 25, 2016) ("an ALJ should not interpret a physician's silence on a particular limitations as an opinion from the physician that the limitation does not exist") (citing *Cahill v. Colvin*, 2013 WL 4034381, *18 (E.D. Pa. Aug. 8, 2013) ("the proper inference from silence about RFC in a treating physician's report is that the issue was not considered")).

Plaintiff's treating physician Dr. Kelita Fox opined, *inter alia,* that Plaintiff could rarely turn his head left and right, occasionally look up and down, and frequently hold his

head in a static motion. (Tr. 24, 1017, 1035-36). The ALJ found Dr. Fox's opinion to be of "little persuasive value" because she had only examined Plaintiff on two occasions and her clinical findings did not support her opinion of a significant neck-head-movement limitation.

Although Dr. Dantoni did not opine as to a neck-head-movement limitation and the ALJ rejected Dr. Fox's opinion as to such a limitation, the ALJ acknowledged that some sort of neck-head-movement limitation was appropriate and included in the RFC a limitation that Plaintiff could only frequently look up and down and turn the head to the left and the right. (Tr. 21). However, the ALJ did not offer any explanation as to how he arrived at this specific limitation. This was error because it is unclear where the specific limitation came from and why it did not go further. *Garcia Medina v. Comm's of Soc. Sec.*, No. 17-cv-6793-JWF, 2019 WL 1230081, at *2 (W.D.N.Y. Mar. 15, 2019); *Westfall v. Comm'r of Soc. Sec.*, No. 19-CV-6473, 2020 WL 3818953, at *3 (W.D.N.Y. July 8, 2020). This error is particularly concerning because: (1) the ALJ found that Plaintiff's cervical spine issues constitute a severe impairment; (2) Dr. Dantoni's finding that Plaintiff had decreased range of motion of the cervical spine and pain when moving his neck seems to cry out for some sort of neck-head-movement limitation; and (3) Plaintiff's treating physician opined that there should be such a limitation, and that such limitation should be much stricter than that derived at by the ALJ.

The ALJ's failure to explain how he arrived at this limitation was reversible error, because limitations in twisting and turning of the neck and head can erode the occupational base of sedentary work. *See Burek v. Saul*, 2020 WL 3401360, *4 (W.D.N.Y. June 19, 2020) ("[T]he lack of discussion by the ALJ regarding Plaintiff's limitations in the

movement of her neck and head, calls into question whether her decision was actually supported by substantial evidence. This failure is 'particularly erroneous here because the ALJ found at step two that Plaintiff had the severe impairment involving her cervical spine.'"); *Frank G. v. Comm'r of Soc. Sec.*, 2019 WL 430887, *3 (D. Conn. Feb. 4, 2019) (remanding where the ALJ "failed to adequately accommodate all the limitations relating to his cervical spine impairment when determining his RFC," because the ALJ failed to "consider his allegations relating to his limited ability to move his head and neck"; noting that head and neck movement was relevant to the claimant's case and that "non-exertional limitations restricting head and neck movement may significantly diminish an individual's work capacity"); *Hopkins v. Comm'r of Soc. Sec.*, 2015 WL 4508630, *5 (N.D.N.Y. July 23, 2015) ("The lack of discussion regarding Plaintiff's limitations in movement of her neck and head, calls into question whether the decision was actually based on substantial evidence.") (citing *Roat v. Barnhart*, 717 F. Supp. 2d 241, 262 (N.D.N.Y 2010)); *Hogan v. Astrue*, 491 F. Supp. 2d 347, 355 (W.D.N.Y. June 19, 2007).

On remand, the ALJ should reach out to Dr. Dantoni to clarify how she related her physical exam findings, which included notations of limited range of motion and significant pain in the neck, to her functional opinion. *See, e.g., Tolhurst v. Comm'r of Soc. Sec.*, 2016 WL 2347910, *5-6 (N.D.N.Y. May 4, 2016) (remanding for ALJ to re-contact consulting examiner where that doctor's opinion was too vague to rely upon in formulating the RFC).

**CONCLUSION**

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 6) is granted and defendant's motion for judgment on the pleadings (Dkt. No. 7) is denied. The case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   March 12, 2024
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge